Independent School District. Mr. Neese, whenever you're ready. I'm sorry, I may not have called the case. Good morning, Your Honor. Good morning. Thank you. The Supreme Court has recently put out a decision in Fort Bend, the application of which would indicate the IDEA's exhaustion requirement is not jurisdictional in nature. And just this week, we submitted a 28-J letter pointing to a case out of the Fourth Circuit that I believe on Monday they decided that their previous case law was inconsistent with the Supreme Court cases and that they therefore held that the IDEA's exhaustion requirement is not jurisdictional and that it is a claims processing rule. All right, so why do we have to answer that question here? We haven't answered it in our circuit, as I understand it, and I don't know that this is the right vehicle to do so here. I mean, the district court said that the school district timely raised the issue. I mean, I guess it was in regards to a supplemental motion for summary judgment, right? So the district court said it was timely. Isn't that an abuse of discretion standard of review? And if it's no abuse of discretion, why does it matter? Well, Your Honor, part of our issue with whether it was raised correctly as a defense is why it matters. The district court cited to motion med-tex to determine whether or not there was a waiver of that defense. Motion med-tex has a two-part test that asks whether that was raised at a pragmatically sufficient time, essentially notice, and whether there was prejudice in the plaintiff's ability to respond. That analysis did not occur at the district court level, and an application of that analysis to the facts of this case clearly indicates that they waived it as a defense. In motion med-tex, for example, it was more of a coincidence that at summary judgment that that defense was seen as pragmatically raised because it was two years. In motion med-tex, it was two years before trial, which is where they raised that issue. Here, to be clear, the district court raised that issue itself. The appellee raised exhaustion as a jurisdictional issue, and that is how they described it in their motion to amend their motion for summary judgment. The magistrate himself took up the issue of whether or not it may have been waived as a defense but did not apply that two-part test of motion med-tex. And again, the application of the two-part test establishes that this defense was waived. They impliedly allowed him to proceed to assert the rationale of the defense. So impliedly they applied this, right? Can we say that's an abuse of discretion? I think it would constitute an abuse of discretion, Your Honor, because there is nothing in the record that— So we would need to send this back for the district court to apply the test in motion med-tex? Yes, Your Honor. I mean, we would ask that it would just be denied in general. But it would also be— Please substitute our discretion for the district court's discretion, even though there's no clear abuse of discretion. I mean, I'm just grappling with, again, how do we question what the district court concluded, impliedly or otherwise, that it was timely asserted? Well, in that case, Your Honor, then it would be, I think, appropriate to remand it for an application of that test, the two-part test in motion med-tex, because there's a lot, I think, that we might have been prejudiced. By the time this came up, too, discovery was closed, and we may have been able to tailor some discovery to determine whether this was a proper defense, and we could have done other research on that issue there. What discovery would you have done to pertain to the question of exhaustion of claims? So, Your Honor, the exhaustion of claims can be excused based on futility of exhaustion, and part of our argument as to futility is the settlement, the alleged settlement, which we have issues with separately as to its validity. But the settlement being our basis for establishing futility, we could have tailored some discovery as to whether or not they performed their obligations under the settlement, whether or not it was valid in the first place. We do have some issues with that in the first place. For example, J.C. had already turned 18 when it was executed, but his mom had not yet gotten his guardianship until after. So there's even a question of whether there was capacity to execute that settlement. Let's say you're right that there are a lot of new developments as to whether exhaustion is jurisdictional, maybe more likely or not, than it's not. But the other new development that's concerning me about this case is your case is all about settlement and futility, correct? Not entirely. But it's a significant part. It is, but one of our— And the reason I ask that is the Supreme Court, after you all filed your briefs, has granted cert on that issue, correct, in the Perez case? I'm not sure about that, Your Honor. But— If the Supreme Court has granted cert on multiple questions in the IDEA exhaustion context, maybe you all would—if I'm correct, you all may need to, and it would be on our invitation, not yours, sua sponte, brief where this case stands vis-à-vis that. Well, we would be happy to supplement any briefing as the Court deems appropriate as to that issue. But if I may go back a little bit, I believe you were asking initially, too, about what our case rests on as to the futility. And, for example, the 1983 claim based on the deprivation of bodily integrity doesn't require establishing that. It requires showing that policymakers implemented a policy or custom that was a moving force behind the constitutional violations. But if it arises out of a FAPE claim, it really falls under IDEA exhaustion. It could, but we don't—our claim is not for a denial of FAPE. Our claim is that BIS— When you say claim, you're saying claim specifically. This, of course, is getting into the TB case, which I know well. Yes. But part of the difficulty is I might agree with you that your first claim answers the Fry questions differently and footnote 9 differently. But would you agree that the other claims are related to the educational situation, the under-training of paraprofessionals? That, to the ADA claim, Your Honor, perhaps, because an element of it that is a denial of a benefit. But then if you're persuasive that we should be going claim by claim, wouldn't you have conceded that those claims are not available to you? Your Honor, I wouldn't directly concede that here, but that would mean that it still might be appropriate to remand the case for at least as to count one of our claims. Because that one is—if the court is proposing that if Fry dictates that— I'm not proposing anything. What are you arguing? We're arguing, Your Honor, excuse me, that that first claim certainly is not a denial. But then does that—how do you read our TB majority decision? And it only discusses this in a footnote, but it seems skeptical that it's a claim by claim analysis, doesn't it? Didn't the majority? It did. It did, Your Honor. But I think that ultimately the gravamen of our claims, if they are not going to be assessed on a claim by claim basis, stem from the injuries that J.C. suffered. What's the strongest circuit law that it has to be done claim by claim? That would be the Wellman case, which I believe was also adopted in the First Circuit. And as far as there being a circuit— We haven't yet decided it explicitly. We've just opined. So were we to rule against you, we'd be creating a split with the First and the Third Circuit? Yes, Your Honor. And then as to the gravamen of our claims, the Fry test and footnote 9, because of the kinds of injuries that he suffered and the nature of the causation to it, which again goes to the policy and custom of BISD, the application of the test in Fry, especially at summary judgment, which we have a lot of evidence to support our claims to here, would indicate that our claim is not about a denial of faith, but at least count one, because the same paraprofessional injured him two different times and very severely. His arm was completely broken in two in the second incident. And that also itself is another indicator that there was two separate incidents with him. It's not just the failure to train or supervise or the qualifications of that paraprofessional. Did you brief this before the district court, the Fry exception to exhaustion? No, Your Honor. We objected to it orally at summary judgment, but the magistrate did not bring up Fry. I mean, the first time it appears on the record is in his report and recommendation. But did you bring it up? In other words, did you brief this argument so that it's preserved for us to consider it? We objected to the magistrate suggesting whether our case was consumed by the IDEA, which took to mean exhaustion, but we did not brief it. The specific issue about the Fry footnote 9 exception. No. No, Your Honor. That one, we only raised it orally at the summary judgment proceeding, but it was not as to the application of the test or footnote 9. But I think that as a matter of review, that that is a significantly legal point that needs to be addressed. And application of that to our case leads to, I think, the only conclusion that our claim is not for a denial of faith, that it is ultimately about the policy or custom of BISD causing the constitutional violations to JC, the tooth and the arm being broken. As a result, if I may also clarify, too, the failure to train aspect of it is a separate basis for liability. As I mentioned, the main claim is whether the policy is a moving force for the harm, and alternatively we can use failure to train to establish municipal liability against BISD. And so our main, the main thrust of that 1983 claim is that it's based on a policy or custom in hiring an assignment of its personnel, BISD's personnel. And even if exhaustion applied and assuming that the test leads to the conclusion that it is for a faith issue, which again, it's not about a denial of faith, but assuming it was, that it is futile based on, sorry, that exhaustion would be futile based on the settlement, which would have precluded theoretically previous, any further exhaustion of administrative remedies. And the other basis for futility is also that BISD's practice in hiring and assigning its personnel was in violation of state law. There are three levels for paraprofessional certification. And the TEA thinks only two and threes are able to work individually with disabled students, not level ones. And as we showed up to, in some years, up to 90% of their personnel were not certified to do these job functions. And at the end of the day, this concerns the state law and doesn't concern a denial of educational benefits. We don't ask for compensation. We don't ask for him to go back to school. We want compensation for his broken arm and his mental trauma and everything that he suffered as a result of the policy causing his arms. And at the end of the day, Your Honor, we're asking that the court reverse that decision and find we think it does need to reach the issue of jurisdiction as to the IDEA exhaustion requirement and that especially considering that Fourth Circuit case that just came out, that it should be treated as a defense and that at least it should go back to determine whether or not the motion med tech's two-part test is met because the report and recommendation does not apply those facts, I mean that analysis. And I would emphasize again, too, that we are at summary judgment with our case. We have a lot of evidence that is undisputed about both incidents, about his injuries, an audit that even our audits that we have history of go back to 2009 even, showing that they are lacking in paraprofessional qualifications and certification. And this led up even to our first incidents in 2016 and the two that happened in February and November with our client. And at the end of the day, it is important, I think, for that to be vindicated. And we ask this court for that reversal, at least to determine whether or not motion med tech's was met. But we believe that applying the case would lead to the only conclusion that the defense was waived by BISD. Thank you, counsel. No, unless there are any other questions, I will wait for rebuttal. Great. Thank you. Rebuttal time? Thanks. Okay, thank you. Mr. Campbell. Good morning, and may it please the court. David Campbell here for FLE Brownsville Independent School District. In this case, the magistrate judge in summary judgment found that the claims had to be dismissed, both for lack of exhaustion under the IDEA and on the merits. The district court, in looking at the magistrate's report and recommendations,  of course, this court can affirm the summary judgment on any grounds supported by the record. I was surprised to hear my colleague on the other side start with this idea about whether or not IDEA exhaustion is jurisdictional or is a claims processing requirement. It is certainly an unresolved and maybe difficult legal issue that courts have struggled with, but it is difficult for me to see how it is relevant at this point in the proceeding. Judge Wilson? Is what you're saying that we could affirm the district court without deciding whether FAPE is claim processing or jurisdictional? Absolutely, Judge Wiener, and I think for a couple of different reasons. First of all, because in this case, as Judge Wilson pointed out, it was at the magistrate's discretion whether or not to allow that amendment. The magistrate ultimately decided to allow us to amend with part of the claims that we were asking for and did not allow us for others. So in this case, for example, we had asked to raise standing and also to raise IDEA exhaustion and also to raise the settlement as barring the claims in this case, and the magistrate, in his discretion, chose not to allow us to add the last claim on the settlement but did allow IDEA exhaustion. But there's a second reason that I don't think that it's important or even necessary for the court to reach that, because in this case there is no harm. The only harm I've heard was my colleague today saying that they might have done some discovery, and when pressed on that, I heard them say that they might do discovery on whether the settlement was somehow breached. I don't know why that would be relevant to the case. It might be relevant to a separate breach of contract action brought against the school district under the settlement. But even if that was the case, one, I don't know why they would need to do discovery because presumably if the settlement was breached, no one would know better than their client. Second, there was no request in the district court or before the magistrate for time to do discovery. In this case ‑‑ Step back just a little bit. It may be difficult and hard to resolve, but isn't it something we have to resolve? Because if it is jurisdictional and they didn't exhaust, we stop there. We can't just assume jurisdiction and decide this case. Okay. I think maybe I was unclear, Judge Shaganson. The court will have to resolve whether or not the plaintiff needs to exhaust. That is clearly something that will have to be resolved. Whether or not it's jurisdictional or a claims processing requirement, the magistrate judge recognized that either way it's a requirement and the magistrate had allowed us to raise the issue. The question is ‑‑ I'm sorry. No, go ahead. Well, I was going to say the question is whether it's timely raised. If it's jurisdictional, we treat it at any time, even if it first comes up right here, right now. If it's claims processing, the school district could waive it. And if they didn't timely assert it, it's not before us. That's right. And so that's where I would go back to what the magistrate said, citing motion MedTech. The magistrate noted that in that case the court had found that even when claims were raised for the first time in summary judgment, they're still timely. And so if you look at the magistrate's understanding of this case, I don't think you can say on this record that there was an abuse of discretion, and I also don't think that my friends on the other side have shown that there was any harm. If there was a concern about needing to do additional discovery, they could have asked for that. They never did. And so it's for those two reasons that I don't think that issue is presented to the court. I think it would be presented to the court if the magistrate judge had refused to allow us to amend. Then I think later we could raise that, and that would be a situation where I think the court would be forced to address that issue head on. If I could move to exhaustion and why this case, in our view and in the magistrate's view and the district court's view, does really involve free and appropriate public education, in a case where a paraprofessional, special ed paraprofessional, injures a student and then the student files an administrative complaint that results in settlement, and then the student or parent files claims in federal court alleging that the special aid had an inability to function as a suitable paraprofessional, those claims must be dismissed for failure to exhaust. Now that describes the facts in this case, but it doesn't just describe the facts in this case. That also squarely describes the facts in a case this court decided in 2020, the Heston v. Austin ISD case. We relied on that. Were you familiar with the cert grant that I mentioned in October? I have to confess I'm not, and so I'll be happy to look at it after argument and if the court needs any additional briefing on whether that impacts the case. We'll inform you if we do, but just so both parties know, the docket number is 21887. It's up from the Sixth Circuit. It's called Perez v. Sturgis. 21887? 887. So I think, Judge Higginson, I am familiar with the Perez case because the Perez case was one of the two cases holding that settlement does not result in exhaustion of the IDEA claim. So I guess since that's been raised, let me move to that. Before I do, if I could say one last thing, unless there are other questions about it, on Heston. I mentioned Heston, and I did want to say in all candor that that is an unpublished opinion from the court, and so we recognize that, but we also think that because it's squarely on point, it is something that really should have been addressed by the other side and never was, and that Heston is directly consistent with McMillan, TB, and the other cases that this court has decided. Before we leave that, though, you know I'm going to ask you about you deal with it in a footnote, and it isn't exactly saying you don't go claim by claim, as the Third Circuit, I guess, has said. Are you comfortable going claim by claim in this case, or do you have a specific position as to what the approach should be? So, Judge Higginson, I thought that this might come up, and I read your dissent in TB very carefully. If I could, just before I answer that, quickly highlight you did raise two other concerns in your dissent. I don't think either are present here. If there are any questions about that, I'm happy to address it, but let me address directly. Waiver issue looms in both cases, but go ahead. Yeah. Let me address the claim by claim issue. So I don't have any concern with the court necessarily addressing a case claim by claim, but I don't think it's necessary, and here's why. As I understood the concern that I think you expressed and that Wellman expressed, it was the concern that you might have a public education claim and a completely unrelated claim. For example, I think the hypo in Wellman was you might have a claim about an IEP in one claim, and then that same student might also have a completely separate claim having to do with an assault on a bus. And just because you include both of those in one complaint doesn't mean the whole complaint should be dismissed for failure to exhaust. I think that what you have going on there is you don't have a common nucleus of facts that leads to each of the claims. And so in Wellman, for example, if you read the opinion, you know, the court goes through the three claims, but all three claims really go back to the same nucleus of facts. And so ultimately in Wellman, what the court did is after going through each claim, they reached the same result that they would have by just looking at the substance of the complaint. And so that's interesting, and I need to think about that. Has any court really explained the disharmony that way? I have not seen that explained. That was just my best attempt to try to understand the concern. I would resolve this with that theory, but if you sort of rigidly parse out each, it looks like you've got both a Frye 9 footnote case in Claim 1 and also arguably, but disagree with me, positive answers to both questions the Supreme Court suggested we ask to know if this is fake. And I say that because it looks like Claim 1 is saying any dependent who's got a mental state of 2 to 3, say nursing home, you see where I'm going, not school, or prison, that has an accompaniment, they would have exactly this claim against being assaulted. And likewise, an adult in the school who just for whatever reason is utterly dependent and needs somebody. That's why I was thinking that as I did in TB, one, I understand your common nucleus answer, and then there's the midstream point. There are a lot of other points, but I've talked a lot. Do you want to just respond to that? Let me take a stab at it, and feel free to let me know if I don't scratch your itch. So I don't know that I have much more to say. I think you've got at least what I think makes sense on the common nucleus of facts, and here I think we do really have a common nucleus of facts that leads to all claims. Now, on your point about Claim 1, I think that that point might have some force if this was a 12B1, 12B6 case, but it's not. And it's important because I think if this case was being decided solely based on the complaint, I mean this was a petition that was filed in the state court. After it was removed to federal court, it was never amended, and so it is a little difficult to follow. It's somewhat vague. But there is clearly an allegation of, I think, corporal punishment in that first claim. That's why it's important that in this case, when you look at the summary judgment response that my friends on the other side filed, it's at 396 of the record, they expressly stated that they emphasize this claim is not based on excessive force or corporal punishment. Now, when we got involved, it was after that had been filed, and that's where reviewing the response, page after page talked about special ed requirements, special education requirements that they alleged weren't being followed, and so this screamed exhaustion of a free and appropriate public education. At the hearing on July 15th, which is at the record, well, the relevant pages for the court are, I would start around 4770 of the record. And this is a hearing that the magistrate judge held on July 15th. The magistrate judge was clearly trying to understand their claims and how this claim about Level I, Level II, Level III certification could potentially cause what they've said happened in this case. In the course of that hearing, on no fewer than three separate occasions did counsel for Ms. Chavez represent to the court that there is no evidence that this was anything other than an accident. You'll see it on page 4776 of the record. You'll see it on 4779 of the record. You'll see it on 4785 of the record. Repeatedly, the judge was trying to understand, is this a case about assault, corporal punishment, or an accident? And so there was point in questioning from the magistrate judge for approximately 15 pages in that transcript, and during those 15 pages, it was repeatedly represented to the magistrate that in this case, there's no evidence of an assault, there's no evidence of corporal punishment. What were left is with the evidence that this paraprofessional, who was a one-to-one aide, who was helping the student in the bathroom, slipped and fell, pulled him down with him, and that in the course of that, broke his arm. Now, as I'm sure the Court's aware, this paraprofessional did lie about that initially, and that was also discussed in the record. In fact, that's why he was terminated. His employment was terminated from the district. But at the end of the day, after doing extensive discovery, taking depositions, the only evidence in the summary judgment record that the magistrate judge considered was evidence that this was an accident. It was an unfortunate slip-and-fall accident. And in the IDEA context, with special ed students that may need to be helped in the bathroom, may need to be helped to move around, and may need to be helped even to be fed, even with the best intentions and even with the best training, it is inevitable that there will sometimes be accidents. Judge Higginson, you had asked a lot in that question, did I cover everything that you were asking, or did I leave anything on the table? You've been very thorough. Okay. Keep going with your analysis. Ben, I think I had mentioned just in passing McMillan, and McMillan deserves more than that, but I'll leave it to the court. I mean, the court is aware of McMillan and the thorough analysis done by Judge Costa on behalf of the court in that case. I think that the really fundamental point that the court made in McMillan that I feel is at the heart of my friend on the other side's misunderstanding about this case is that although Judge Costa recognized that it was a close, textualist question over how to decide what the IDEA means when it says relief, an exhaustion for relief, ultimately the court concluded in McMillan that the focus is not on the remedies sought, it is on the conduct. And if the conduct can be addressed through the special education process that the IDEA provides, then exhaustion is required. Now, that doesn't mean that there has to be a one-to-one correspondence. It doesn't mean that the ADA claim might not have a different flavor than the IDEA claim. But this court has recognized that. I go back to McMillan again. The court recognized that the IDEA does not displace other causes of action, but where there is overlap with those causes of action, exhaustion is required. Let me ask you this. If we decided it in your favor on failure to exhaust, could they go back and exhaust and still after that come back to us? I don't think so in these cases, Your Honor, because under the IDEA, I believe there's a one-year statute of limitations to go through the process. And additionally, in this case, we run into the settlement agreement, because this is not a case where a lawyer just didn't realize that they needed to exhaust. This is a case where we went through the IDEA exhaustion process. We had a preliminary meeting. We went to mediation and settled the claims. And I do want to address, I don't remember if it was in the brief or in the transcript of the hearing, but there have been representations that the arm incident, the broken arm, was simply not involved in the IDEA process or not, and that is simply incorrect. And all you need to do is look at the due process complaint, which I don't have the record site in front of me. Oh, here it is. I think that it's at page 4340 of the record that you can read their due process complaint. Paragraphs 8 and 13 expressly refer to the broken arm. So in the IDEA process, we were dealing with a number of claims for special education services as a result of both the broken tooth incident and the arm. That was resolved by settlement at the beginning of the students. I think it was his last year in Brownsville ISD. And so we put in place those services that we agreed to in the settlement, and he finished his year at the school district. And it was only after he graduated, a year after we had settled this case, that this claim would be brought. So to circle back around, I think particularly in this case, there would be no way to go back and exhaust given the settlement in the case. I think that is really the question that, or, I mean, I understand that for some people exhaustion is a bummer, that they don't want to do it, and that it is a hurdle. And that is one way to see administrative exhaustion. But this court has also recognized that administrative exhaustion also provides an opportunity for swift resolution, to provide education instead of a years-later damages remedy. And frankly, I would submit to the court that in this case, I mean, the resolution by settlement is the best outcome in one of these cases. Now, if the student and their attorney or their parents feel like they're not getting everything they need, then as this court recognized in Reyes, and as the court recognized in Perez and AF, the Tenth Circuit opinion referenced by the magistrate and by the district court, then the student can go and get a decision of binding from a decision officer. But this court in Reyes recognized that exhaustion requires more than pleading. I think to quote the court, it requires a finding and decision. And that comes straight out of 1450, or 20 U.S.C. 1450. I see I'm low on time, so if there are no more questions, I'll wrap up. But I don't want to leave any questions unanswered. If there are no other questions, then I would say from Brownsville ISD's perspective, as a sort of practical, equitable nature, what happened in this case, when it was settled, is what you would hope happens in every IDEA case. The student was provided with services. Attorney's fees were part of the settlement. And at that point, this case should have been finished. All of the claims that are now asserted in this petition, that is before this court in this case, were asserted in the administrative complaint and resolved by settlement. Moreover, the exhaustion question may have been, I think, a really difficult question for this court to answer back in 2017, right after Frey was decided. But given this court's substantial development of the law since Frey, in McMillan, in TB, in Heston, and in other cases, I think those cases compel the court to affirm the district court's summary judgment in this case. I can't thank the court enough for the chance to argue here. This is my first time before the court, and it's been a real honor. Thank you. Thank you very much. Fun to have a first argument. Mr. Neist, you've got rebuttal time. Thank you, Your Honor. I would like to address a couple of issues raised by Appelli here. One, as to motion Med-Tex, it doesn't really just stand that a party may just raise a defense at summary judgment. Again, I think it was more a coincidence that the elements of that test, the two-part test in Med-Tex, were met at a summary judgment stage, because one of the emphasized factors there is the amount of time that they took to raise it. I mean, here, BASD took 991 days after case was removed to even bring up exhaustion. At the same time, there's sort of delayed bringing up of Frye by you. Well, we brought our claim assuming that we could just proceed on the merits, at least by the time discovery was closed, or at least once we hopefully came over summary judgment. But as to Frye, we did not originally put it in our petition. As to whether the settlement and the discovery issues that my colleague raised, discovery was closed by the time this issue came up with Frye and exhaustions. And the judge had made clear, the magistrate had made pretty clear, that he was not going to entertain any further extensions of discovery, because we had already received a few by then. I know my colleague also brought up Heston v. Austin, which I would also just emphasize is unpublished and not precedent. But as to the merits and substance of that case, there was only one instance of harm in that case. And they specifically did ask and plead for educational compensation. And here, we're not asking for him to go back to school. We're not asking for compensation for private tutoring or anything like that that he received. We're asking for compensation for his medical and physical and mental trauma. What's your thought about Mr. Campbell's suggestion that we can harmonize the circuit law about claim to claim? He's accepting that we would look claim to claim, but if the bodily injury footnote 9 claim actually is part and parcel of the same nucleus of facts, then it is a fake case and you could do just what you did and settle the whole kit and caboodle. Well, as far as the settlement, Your Honor, that relief, I would emphasize there's a difference between relief available under the IDEA and relief that an entity like BISD can offer. And I think it confuses what Fry asks for, because when we're asking for relief based on his physical and mental injuries, just because BISD could have offered that in a settlement doesn't mean that our exhaustion was required because the IDEA does not offer that kind of relief. It explicitly doesn't offer compensatory damages except for private education, and it offers also educational relief. But would you agree with the characterization of Wellman that courts that are doing it claim by claim and allowing the bodily injury assault cases to go forward, those are really assaults that are separate from what was alleged to be the educational deficiency? I think in our case it's very intertwined, but I think it's primarily not about a denial of fate. Again, like my colleague did mention, we don't say that it was not anything other than a slip and fall, but, Your Honor, we have an X-ray report from an orthopedic surgeon that said that J.C.'s arm had to have been used as a lever in order to produce the kind of spiral fracture that occurred in his humerus. He basically said it was probably impossible that it was a slip and fall, because Villarreal, who is of questionable credibility, he said something like that he pulled him down when he slipped in the bathroom.  And, again, at summary judgment, evidence like that should be viewed in our favor to establish that this was more than a slip and fall. Okay. But it's how a surgeon says the fracture appears compound or whatever is different than if you're telling the magistrate in the hearing that this is not a corporal punishment case, this is not an excessive force case. Well, Your Honor, as to that, BISD has no corporal punishment policy, so there cannot be an excessive force claim when there is no use of force authorized. That was the point about that. It's that they don't authorize corporal punishment or use of force, so we can't claim excessive force. Okay. You must have one or two other points. Your time is running out. Yes, Your Honor. Yeah. The only other thing is that the relief we're asking for is not under IDEA, that it cannot ‑‑ we cannot get relief for his ‑‑ Right. But I think he's right. In McMillan, the focus is the complaint itself. It's not so much what the remedy is. Well, and the history of the proceedings, too, which are also facts. They're factual history that also, at summary judgment, should be looked at in our favor. And unless there are any further questions, Your Honor, I might ‑‑ You've both been very helpful. Appreciate it. And that is our final case for this sitting. Thank you. This was my first time here, too. Oh, my goodness.